Louis Brustein et al. *v.* Zoning Commission of the City of Bridgeport et al.

King, Murphy, Shea, Alcorn and Parmelee, Js.

Argued May 7—decided July 31, 1963

*Austin K. Wolf,* with whom was *Aaron B. Schless,* for the appellants (plaintiffs).

*Norwick R. G. Goodspeed,* for the appellees (defendants Inter-Church Residences, Inc., et al.); with him was *John J. McGuinness,* assistant city attorney, for the appellee (named defendant).

SHEA, J. The zoning commission of Bridgeport changed the zone of property of the defendant Patsy Musone from residence A to residence apartment. The plaintiffs, owners of property in close proximity to the land in question, appealed to the Court of Common Pleas, which affirmed the decision of the commission. The plaintiffs have appealed to this court.

The property covered by the change of zone consists of 10.35 acres at the southeast corner of Park Avenue and Westfield Avenue and has a frontage of about 526 feet on Park Avenue. Park Avenue in Bridgeport is a main traffic artery extending from beyond the Merritt Parkway on the north to Long Island Sound on the south. It connects the parkway with the downtown section of the city and the Connecticut Turnpike. Brooklawn Avenue intersects Park Avenue from the southwest on an angle at a point nearly opposite the southern boundary line of the Musone property. The application was filed by Inter-Church Residences, Inc., a nonprofit Connecticut corporation organized under the auspices of the Council of Churches of Greater Bridgeport, Inc. The applicant plans to erect a ten-story residence apartment building to provide housing and care for persons sixty-two years of age

and older.  In accordance with § 8-3a of the General Statutes, the application was referred to the Bridgeport planning commission.  In a report to the zoning commission under date of November 15, 1961, the planning commission favored the proposed zone change and recommended that the developers and the owners of the property be asked to grant an easement to the city for highway purposes over a narrow strip of land bordering the eastern boundary of Park Avenue and the southern boundary of Westfield Avenue, as shown on a map prepared by the office of the city engineer and attached to the report.  The town of Fairfield lies west of Park Avenue and Brooklawn Avenue, the boundary line between Fairfield and Bridgeport being located in those streets.  Pursuant to § 8-3b of the General Statutes, the application was also referred to the regional planning agency of Greater Bridgeport, which also reported favorably on the proposed zone change.  On December 1, 1961, the zoning commission, after notice and hearing, voted to grant the application for a change of zone, "effective when and if the owners and developers of the property shall, by proper instrument, grant to the City of Bridgeport, Connecticut an easement, for highway purposes, over a portion of the subject property as indicated upon a map prepared by the City Engineer."  An instrument granting such an easement was executed by the designated parties on December 29, 1961, and filed in the Bridgeport land records on January 4, 1962.  Thereafter, the zoning commission filed with the city clerk a legal notice stating that the change of zone from residence A to residence apartment became effective on January 4, 1962.

One of the claims of the plaintiffs is that the ac-

tion of the zoning commission is illegal because the change of zone will aggravate existing traffic hazards. The change of zone was made subject to a condition. If the owners and the developers failed or refused to grant the easement to the city, the change of zone would not become effective. It is quite apparent that the zoning commission, in imposing this condition, adopted the recommendation of the planning commission. The language of the zoning commission, in fixing the condition, is almost identical with that used by the planning commission in its report. The easement granted to the city covered the exact land shown on the map which accompanied the report of the planning commission. The report stated that Park Avenue is laid out as a ninety-nine foot street but that it is not built to its full width directly in front of the area of the proposed zone change. The planning commission felt that there was a great need for widening Park Avenue. A large part of this work would have to be done by Fairfield on its side of the avenue. The record does not disclose when this improvement will be undertaken by Fairfield. The recommendation concerning the grant of the easement was made to provide for the acquisition of land which could later be used for the widening of the streets in this area, thereby reducing the traffic hazards. Because of conferences between the Bridgeport city engineer, the police department and the planning engineer, an intensified study was made of conditions in the area, including the need of additional construction and the utilization of certain traffic devices. Undoubtedly, the problem underlying these studies was traffic congestion. The minutes of the executive meeting of the zoning commission show that the report of the planning commission and the

recommendations contained in it had an important influence on the decision to change the zone of the property. At this point on Park Avenue, the four-lane divided highway narrows into a two-lane road. There is also a curve in the road. The problem of traffic congestion assumed such importance in the decision of the zoning commission that the change of zone was made conditional on the granting of the easement for the widening of the highway. The conclusion is inescapable that the zoning commission was prompted to impose this condition because of its concern about traffic congestion in the area.

The action of the zoning commission clearly contemplated the widening of both Park Avenue and Westfield Avenue. The completion of this improvement requires the approval of another agency of the city government and the expenditure by it of public funds. Over these matters the zoning commission has no authority or control. *Gordon* v. *Zoning Board,* 145 Conn. 597, 603, 145 A.2d 746. Whether either one or both of these requirements could or would be satisfied does not appear. Unless the completion of these improvements is assured, the underlying problem of the traffic congestion which was the cause of the imposition of the condition remains. See *Luery* v. *Zoning Board,* 150 Conn. 136, 141, 187 A.2d 247. The mere execution of the instrument granting the easement to the city did not, and could not, solve the traffic problem. So long as traffic congestion remains a major problem, the change of zone should not be granted. *Whalen* v. *Town Plan & Zoning Commission,* 146 Conn. 321, 327, 150 A.2d 312.

It is unnecessary to discuss the other assignments of error.

There is error, the judgment is set aside and the

case is remanded with direction to sustain the appeal.

In this opinion KING, ALCORN and PARMELEE, Js., concurred.

MURPHY, J. (concurring in the result). The opinion does not emphasize, as I think it should, the lack of any evidence before the commission, by any official authorized to speak for the town of Fairfield, to the effect that Fairfield will widen Park Avenue on the Fairfield side of the boundary line so as to double the present width of the avenue from Brooklawn Avenue north to Toilsome Hill Road and make a uniform four-lane highway. The mere statement by the attorney for Inter-Church Residences, Inc., that Fairfield is aware of the situation and is prepared to do the job when it feels it is needed falls far short of a definite plan by Fairfield to do the work which the Bridgeport planning commission in its report indicated is needed at this time, regardless of the change of zone. See the record of a somewhat comparable situation in *Gordon* v. *Zoning Board,* 145 Conn. 597, 145 A.2d 746, and its resolution in *Luery* v. *Zoning Board,* 150 Conn. 136, 187 A.2d 247, after evidence was presented to the zoning board of actual contracts for the road construction deemed necessary in the light of the opinion in *Gordon.* Furthermore, in the present case, one of the residents on the Fairfield side of Park Avenue testified that for twelve years he had been unable to get any definite information of the layout of that avenue in this area from the town engineer, that is, from the same source as was given for the statement of the attorney for Inter-Church Residences, Inc. Hearsay statements cannot be accepted as proof of the facts asserted.