[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On May 2, 1994 Alan Weiner and Keith Weiner d/b/a Colonial Builders and Developers submitted an application to the New Milford Zoning Commission seeking a special permit in connection with the proposed use of a parcel of land containing 10.761 acres located at 458 Danbury Road a/k/a Connecticut Route 7 to conduct an outdoor flea market, special events and auctions (Record #1). The Weiner site is located in an industrial zone (Record #1).
The Weiner application was filed with the Commission pursuant to the provisions of Article II-VI C of the zoning regulations which permits the outside storage and/or display of inventory upon the acquisition of a special permit from the Commission (Record #20, p. 2-20).
On June 28, 1994, the Commission held a public hearing on the Weiner application (Record #28). The hearing on the Weiner application was continued to and completed on July 12, 1994 (Record #24). On September 13, 1994 the commission denied the Weiner application (Record #17 and Record #10).
Notice of the decision of the Commission was published in The New Milford Times on September 22, 1994 (Record #13) Weiner appealed the decision of the Commission to this court on October 6, 1994. On May 22, 1995 the court (Pickett, J.) announced its decision sustaining the Weiner appeal for the reasons stated therein and remanded said appeal to the Commission "for further CT Page 649 proceedings in accordance with law."
On July 25, 1995, pursuant to the order of the court, the Commission thoroughly reviewed, once again, the record of its proceedings with respect to the Weiner application and voted unanimously to deny the same (Record #31). On July 31, 1995 the Commission sent a certified letter to Weiner setting forth its decision with respect to their application and the reasons therefor (Record #29, Appendix p A-47). Notice of the decision of the Commission was published in The New Milford Times on August 4, 1995 (Record #30).
 I
The plaintiffs as the owners of the property and the applicants are aggrieved and therefore entitled to appeal. Conn. Gen. Stat. § 8-8(b).
The Weiners are the owners of a 10.761 acre parcel of land located on the westerly side of Danbury Road a/k/a Route 7. The application filed by the Weiners for a special permit to conduct an outdoor flea market together with special events and auctions was accompanied by a site plan as required by the provisions of Article III A. paragraph 4.a of the zoning regulations (Appendix p. A-23). The site plan returned as Record #18 discloses the following present and proposed use of the Weiner site:
1. A building containing 25,000 square feet of retail space is located on the site and is currently used as an indoor flea market.
2. An additional 10,000 square feet of retail space has been approved by the Commission.
3. At the present time 173 parking spaces are located on the site.
4. In addition to the existing uses, Weiner proposed to add 200 outdoor retail vendor spaces.
5. 432 additional parking spaces are proposed.
The Commission conducted a public hearing on the Weiner application which public hearing occurred on the evenings of June 28, 1994 (Record #28) and July 12, 1994 (Record #24). Extensive testimony was taken by the Commission with respect to the congested CT Page 650 nature of existing traffic on route 7. The transcript of the public hearing is replete with observations of the Commission members themselves concerning the present traffic congestion on route 7.
Article III A. paragraph 4.b. of the zoning regulations (Appendix p. A-2) provides as follows:
"An application for a special permit shall be submitted in writing to the Commission and shall also be accompanied by the following:
b. Traffic impact analysis, prepared by a recognized traffic engineer, indicating the expected average daily vehicular trips, peak hour volumes and volume/capacity ratios, access conditions to the lot, distribution of traffic, types of vehicles expected and the effect upon the level of service of the streets providing access to the lot".
Attached to the Weiner application (Record #1) is a request by Weiner that the Commission waive the requirement of a traffic study. At its meeting of June 28, 1994, the Commission, by unanimous vote, voted to deny the requested waiver. At its meeting of June 10, 1994, the Commission voted to keep the public hearing open to July 26, 1994 for the purpose of receiving a report from the State Traffic Commission and a traffic report from the applicants' traffic engineer (Appendix p. 10).
At the continued public hearing of July 12, 1994, (Record #24), the Commission received a copy of the "Report of Findings" of the State Traffic Commission (Record #3) (Appendix p. A-15). The Commission did not receive a traffic impact analysis as required by the provisions of Article III A. paragraph 4.b. of the zoning regulations (Appendix p. A-2). What the Commission did receive was a traffic count (Record #6) taken by the applicants neither of whom are traffic engineers (Record #24, Appendix p. A-20). The applications stated that a traffic report would be forthcoming from a traffic engineer. The public hearing was closed on July 12, 1994 "with the understanding that the traffic report is gonna be submitted by Mr. Chann" (Record #24, Appendix p. A-19). What the Commission received at its meeting of July 26, 1994 (Record #25) was a one-page letter from Mr. Chann dated July 15, 1994 (Appendix pp. A-38 to A-42) which simply referred to the traffic counts taken by the applicants. Mr. Chann evidently took no independent traffic counts and his letter of July 15, 1994 does not CT Page 651 comport with the requirements of Article III A. paragraph 4.b. of the zoning regulation (appendix p. A-2).
The authority of a local zoning commission to require the submission of a traffic impact analysis in connection with an application seeking site plan approval and/or a special permit was reaffirmed in two recent supreme court cases; Friedman v. Planning Zoning Commission, 222 Conn. 262, 608 A.2d 1178 (1992) andBarberino Realty Development Corp. v. Planning ZoningCommission, 222 Conn. 607, 610 A.2d 1205 (1992).
The plaintiffs in their brief take the position that their failure to submit a traffic impact analysis as required by the zoning regulations was not a proper basis upon which the Commission could deny their special permit application because the State of Connecticut has pre-empted its ability to consider the existing traffic volumes on route 7. The plaintiffs rely on the provisions of § 14-311 of the General Statutes and the case of CompounceAssociates Limited Partnership v. Southington Planning ZoningCommission, 4 Conn. L. Rptr. 267 (1991).
In this particular case, Article III A. paragraph 7 d. of the zoning regulations (Appendix p. A0-3) specifically provides as follows:
"Traffic. Where it is projected that the additional traffic resulting from the project will reduce the level of service to D or below, the Commission shall not approve the project unless and until provisions has been made for the improvement of said condition. In all traffic analysis reports, use of a volume/capacity ratio of one and zero hundredths (1.00) to represent either level of service C or E is acceptable as long as the selected base is used consistently and clearly indicated."
In Barberino Realty Development Corp. v. Farmington Planning Zoning Commission, 222 Conn. 607, 616-617 (1992), the court ruled in situations involving a special permit application, the Commission is authorized to consider the suitability of the proposed use at the location selected by the applicant and further that the Commission is authorized to consider off-site traffic conditions in determining whether the standards set forth in the zoning regulations for a special permit have been satisfied.
II
CT Page 652
In their brief at pages 11 and 12, the plaintiffs assert that § 14-311 of the General Statutes preempts the defendant Commission from entering any order that would contravene or conflict with the State Traffic Commission. As authority for their position, the plaintiffs cite the decision of the superior court in CompounceAssociates Limited Partnership v. Southington Planning ZoningCommission, supra, and the decision of the supreme court inManchester Sand Gravel Co., Inc. v. Town of South Windsor,203 Conn. 267 (1987). Neither of these cases is applicable to the fact situation in this case.
The holding of the court in Compounce Associates LimitedPartnership at page 267 was that "under these circumstances it would defeat the purpose and intent of § 14-311 to allow the defendant to deny plaintiff's application because of the plaintiff's refusal to undertake road modifications more extensive than those required by the STC. To hold otherwise would be to frustrate the legislative policy of ensuring that decisions affecting construction and modification of state highways be made by one agency, the STC." The New Milford Zoning Commission in this case did not deny the plaintiffs' application because of the plaintiffs' refusal to undertake road modifications more extensive than those required by the State Traffic Commission; nor has the New Milford Zoning Commission passed an ordinance or regulation or taken any other action seeking to prohibit and/or regulate the type of motor vehicles which could pass on route 7 which the court inManchester Sand Gravel said that the Town of South Windsor had no authority to do. The basic reason for denial by the Commission deals generally with concerns over increased traffic which the Commission determined would be detrimental to the public health, safety and welfare.
The report of the State Traffic Commission in this case properly dealt with needed modifications and improvements to route 7, if the Commission decided to grant the special permit application of the Weiners. The certificate issued by the State Traffic Commission to the Weiners expressly provides that "this certificate is subject to the developer obtaining approval of the development by the New Milford Planning Zoning Commission or other responsible municipal agency" (Appendix p. A-11). The supreme court in Friedman and Barberino has stated that "an examination into special traffic consequences of a given site is permissible when the regulations require it." The zoning regulations in this case specifically require it. CT Page 653
 III
In passing upon a special exception the authority is acting in its administrative capacity determining if the proposal satisfies the standards in the regulations permitting the exception; Farinov. Zoning Board of Appeals, 157 Conn. 420, 422; and the "conditions necessary to protect the public health, safety, convenience and property values," § 8-2 of the General Statutes. Essentially, the Board must decide whether the standards in the regulations and the statute are satisfied. A.P. W. Holding Corp. v. Planning Zoning Board, 167 Conn. 182, 185.
The court's inquiry focuses on whether the board's reasons are reasonably supported by the record and are pertinent considerations the board is required to apply. Housatonic Terminal Corp. v.Planning Zoning Board, 168 Conn. 304, 304-7. In this regard, the court will not substitute its judgment for that of the zoning authority. Zieky v. Town Plan Zoning Commission,151 Conn. 165-167; Housatonic Terminal Corp. v. Planning Zoning Board, supra; and will not override the authority unless there is a clear and definite breach of duty. Luery v. Zoning Board, 150 Conn. 136,146; see also Goldberg v. Zoning Commission, 173 Conn. 23, 25-7. Because local authorities are close to the local circumstances and conditions, the zoning agency is given a wide discretion in determining the public need and the means of meeting it; Lurie v.Planning Zoning Commission, 160 Conn. 295, 312; Zieky v. TownPlan Zoning Commission, supra. Where there is a conflict in testimony before the agency, the court will not substitute its opinion for that of the fact finder. Horwath v. Zoning Board ofAppeals, 163 Conn. 609. Furthermore, the decision must be sustained if even one of the reasons given by the agency is sufficient to support its decision. Goldberg v. Zoning Commission, surpa [supra] 26.
This case involves an application by the plaintiffs for a special permit to conduct an outdoor flea market on premises which it is alleged they own on the westerly side of route 7 in New Milford, 458 Danbury Road. At the present time, the plaintiffs have a permit to conduct an indoor flea market in a building located thereon which is 700 feet long. This building is capable of accommodating 300 vendors. Several hundred parking spaces are presently provided on site. The proposal before the Commission, if granted, would permit an additional 200 outdoor vendors and require an additional 432 parking spaces. CT Page 654
The outside storage and/or display of inventory may be permitted as a special permit use in an industrial zone provided the applicant is able to satisfy all of the specific standards set forth in Article II-VI paragraph C of the regulations and all of the general standards and requirements set forth in Article III A. of the zoning regulations.
The whole purpose of the special permit process is to enable the Commission, on a case by case basis, to determine if certain specific uses of land at particular locations chosen by the applicant are appropriate given the nature of the surrounding uses, the access thereto and the myriad of circumstances with differing characteristics which can arise with certain permitted uses of land such as the outside storage and/or display of inventory. Special permit uses are potentially troublesome uses and although appropriate in certain locations maybe totally inappropriate in other locations within the same zoning district.
Even in situations where an applicant agrees to be bound by and to comply with all of the specific requirements of the zoning regulations, the court has held that a zoning commission is not required to grant the requested special permit.
The fact of the matter is that the Commission, based upon all of the testimony presented to it at two separate public hearings and its own personal knowledge of the area which was selected by the applicant for the conduct of an outdoor flea market, has concluded that this particular application does not satisfy the standards and the informational requirements set forth in Article III A. of the regulations. The plaintiffs failed to submit a traffic impact analysis as required by the provisions of Article III A. paragraph 4.b. of the zoning regulations despite repeated requests from the Commission that the applicants furnish the same.
In addition thereto, the plaintiffs failed to demonstrate that the additional traffic resulting from their proposed use would not reduce the level of service on route 7 to D or below as required by Article III A. paragraph 7d. of the zoning regulations. Indeed, their position is that the impact of whatever traffic their special permit application has on route 7, a state highway, is exclusively under the jurisdiction of the State Traffic Commission; the zoning commission, thereby being preempted from considering any matters relating thereto. In a word, according to the plaintiffs, the congested nature of traffic on route 7 was not and is not the concern of the Commission. CT Page 655
However, the Commission is not required, in its consideration of an application for a special permit use, to contribute to existing traffic congestion by granting the requested special permit. § 8-2 of the general statutes specifically mandates that the zoning regulations "shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets. . ." The special permit process adopted by the commission is designed to satisfy this particular mandate. See Whalen v. Town Plan Zoning Commission, 146 Conn. 321; Gordonv. The City of Stamford, 145 Conn. 597; Burnstein v. ZoningCommission, 151 Conn. 101 where the supreme court in each case reversed the decision of a local zoning commission because of its failure to heed the mandate of § 8-2 of the general statutes relating to traffic.
The Commission did not act illegally, arbitrarily or in abuse of the discretion vested in it in determining that the plaintiffs' application for a special permit did not satisfy the standards set forth in the regulations and accordingly the appeal of the plaintiffs is dismissed.
PICKETT, J.