HERBERT V. LARSON ET AL. *v.* SHERMAN S.
JACOBSON ET AL.
(12775)

HEIMAN, SCHALLER and HENNESSY, Js.

Argued March 23—decision released June 13, 1995

*James W. Shea,* with whom, on the brief, was *John B. Oestreicher,* for the appellants-appellees (plaintiffs).

*Geoffrey A. Hecht,* with whom, on the brief, was *Milton I. Caplan,* for the appellees-appellants (defendants).

SCHALLER, J. This is an appeal and cross appeal from the judgment of the trial court in this action for recovery of a credit for prepayment of an obligation owed by the plaintiffs to the defendants. On appeal, the plaintiffs, Herbert V. Larson and Bonnie Larson, claim that the trial court improperly concluded that (1) the term prepayment is ambiguous and (2) the transactions in 1982 and 1983 were not prepayments. On their cross appeal, the defendants claim that the trial court improperly concluded that the plaintiffs were entitled to a credit when the note was fully paid and satisfied in 1985. We affirm the judgment of the trial court.

The trial court found the following facts. In October, 1978, the plaintiffs bought seven properties in New Haven from the defendants for the sum of $425,690.25. The plaintiffs made no down payment; the entire purchase price was financed by the defendants by way of a note and mortgage. The note provided that if the makers prepaid any portion of the note, they were to receive an additional credit against the outstanding principal of the note equal to 5 percent of such prepayment.[1] The plaintiffs executed a mortgage deed in favor of the defendants, and the deed incorporated the 5 percent clause from the note. The agreement between the parties, by way of a "mortgage insert," provided for a mechanism for releasing individual properties from the blanket mortgage.[2]

---

[1] The note provided that "[i]f the makers shall prepay any portion of this Note in whole or in part during the term hereof, the makers shall at the time of such prepayment receive an additional credit against the then outstanding principal of this note in an amount equal to five percent (5%) of the amount of such prepayment of principal."

[2] The mortgage insert provided in part: "The mortgagors herein reserve the right to release all or any part of the properties hereinabove described

In 1982, the plaintiffs sought to sell one of the properties that were subject to the mortgage. The defendants released the mortgage and reduced the payment schedule to reflect the release pursuant to the mortgage insert, which required the defendants to release the properties upon payment according to an agreed formula and to adjust the principal balances accordingly. On November 24, 1982, the plaintiffs made a payment of principal in the amount of $83,828.39. At the time of the sale, the plaintiffs did not assert that they were entitled to a credit for prepayment.

In 1983, the plaintiffs sold two more of the mortgaged properties and the principal balance was again reduced pursuant to the agreed payment formula. On March 31, 1983, the plaintiffs made a payment in the amount of $285,479.12. The plaintiffs did not assert a right to a credit for prepayment at this time either. Both modifications of the mortgage document provided that the terms of the original "mortgage and promissory note secured thereby shall continue in full force and effect in all other respects . . . ."

In 1984, the plaintiffs filed for protection under chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 1301 et seq., and the petition was later converted involuntarily to a chapter 7 bankruptcy. In July, 1985, the trustee in bankruptcy paid the entire remaining balance due the defendants. No credit was given to the plaintiffs at that time.

On May 9, 1991, the plaintiffs commenced this action against the defendants, seeking credit for the prepayments. The trial court ruled that the term prepayment was ambiguous and that the advance payments in 1982 and 1983 were not prepayments, but that the paying

from the operation of this mortgage upon payment to the mortgagees of a sum of money to be determined in accordance with the following formula. . . ."

off of the entire balance in July, 1985, was a prepayment and entitled the plaintiffs to a 5 percent credit under the terms of the agreement. This appeal and cross appeal followed.

I

The plaintiffs claim that the trial court improperly concluded that the term prepayment as used in the note was ambiguous and that the court improperly determined that the transactions in 1982 and 1983 were not prepayments. We do not agree.

The interpretation of a contract term that is not so clear as to render its interpretation a matter of law is a question of fact, subject to the "clearly erroneous" standard of review. Practice Book § 4061; *Bowman* v. *1477 Central Apartments, Inc.*, 203 Conn. 246, 256–57, 524 A.2d 610 (1987). "We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Internal quotation marks omitted.) *Lukas* v. *New Haven*, 184 Conn. 205, 208, 439 A.2d 949 (1981); *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 88, 612 A.2d 1130 (1992); *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, 207 Conn. 468, 473, 542 A.2d 692 (1988). " 'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Doyle* v. *Kulesza*, 197 Conn. 101, 105, 495 A.2d 1074 (1985).

The trial court found that the term prepayment was ambiguous because it was not defined in the note or mortgage deed. The court interpreted the term prepayment on the bases of the note and the intent of the par-

ties. "When an ambiguous term is at issue, the trial court can examine the extrinsic evidence to resolve the question of the parties' intent. *Kronholm* v. *Kronholm,* 16 Conn. App. 124, 131, 547 A.2d 61 (1988)." *Ballato* v. *Board of Education,* 33 Conn. App. 78, 88, 633 A.2d 323 (1993), cert. denied, 228 Conn. 923, 638 A.2d 37 (1994).

The trial court's interpretation of the term prepayment was based on two factors. The first factor was that the intent behind the prepayment provision was to encourage the plaintiffs to build up equity in the property. The trial court found that to be so because there was no down payment on the property and, thus, no initial equity. The second factor was that to be a prepayment a payment must not be based on or provided for by any other term of the note and mortgage deed. If some other part of the note or mortgage provided for the payment, it would not be considered a prepayment.

The trial court's interpretation of the prepayment provision of the note and mortgage was entirely reasonable. "Interpretation [of a contract] requires a determination of the intention of the parties as manifested by their words and conduct. 'Intention is an inference of fact, and the [trial court's] conclusion is not reviewable unless it was one which the trier could not reasonably make.' *Hydro-Hercules Corporation* v. *Gary Excavating, Inc.,* 166 Conn. 647, 653, 353 A.2d 714 (1974)." *Heyman* v. *CBS, Inc.,* 178 Conn. 215, 227–28, 423 A.2d 887 (1979). The court based its interpretation of prepayment on the language of the note and mortgage, the intent of the parties, and the parties' conduct under the note and mortgage.

"In addressing a challenge to the facts found by the trial [court] . . . this court's function is to determine whether those findings were clearly erroneous. Prac-

tice Book § 4061. Because the resolution of conflicting factual claims falls within the province of the trial court, we can reverse the judgment only if the findings are clearly erroneous. *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, [supra, 207 Conn. 473]. We cannot retry the facts or pass on the credibility of the witnesses. Id." *Plikus* v. *Plikus*, 26 Conn. App. 174, 177, 599 A.2d 392 (1991).

The record in the present case supports the trial court's finding that the term prepayment was ambiguous. The record also supports the court's interpretation of that term under the provisions of the note and mortgage. At trial, the named defendant testified to the purpose of the prepayment provision. The court found that testimony to be the most credible. "In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony." *Kimberly-Clark Corp.* v. *Dubno*, 204 Conn. 137, 153, 527 A.2d 679 (1987). We conclude, on the basis of this testimony, that the trial court's interpretation of the term prepayment was not clearly erroneous.

The plaintiffs' first two claims for credit were rejected because, as found by the court, they were the subject of a separate arrangement. "The court [found] that the transactions in 1982 and 1983 that resulted in reductions of the principal were not prepayments but were the subject of a separate arrangement, stated in Exhibit A, Mortgage Insert, concerning sales of mortgaged properties, with which the defendants complied and for which the plaintiffs received all the specified consideration." Although the court did not expressly premise its finding on the equity factor, its denial of these claims is supportable also under that factor, as well. The payments in this case would not help to build up equity in the properties because the properties were being sold and released from the mortgage.

The trial court's decision is supported by its interpretation of the prepayment provision in the note and mortgage. Because the court's findings as to the interpretation of the term prepayment were not clearly erroneous, its decision based on that finding to reject the plaintiffs' first two claims for credit is also not clearly erroneous.

## II

The defendants, on cross appeal, claim that the trial court improperly concluded that the plaintiffs were entitled to a credit when the note was fully paid and satisfied in 1985. We disagree.

The trial court granted the plaintiffs' claim for credit on the ground that that transaction, "unlike the two prior transactions," was not made subject to some other independent provision of the agreement between the parties. In other words, when the plaintiffs paid off the balance of the mortgage, they did not do so under a separate arrangement between the parties. The prepayment provision, therefore, was controlling. Although the first factor—building up equity in the property—does not support the finding, the second factor does clearly support the court's decision, and this is a sufficient basis for that decision.

The court found that the second modification of the mortgage in accord with the other provisions of the original note and mortgage that remained in full force and effect "did not remove eligibility for a prepayment credit if the debtor ever missed a payment, and the court construe[d] the agreement, in accordance with the testimony of [the named defendant], to be that any payment that put the plaintiffs ahead of the agreed payment schedule was eligible for a prepayment credit, other than payments made by operation of some other obligation under the same contract." The court's conclusion that this payment qualified as a prepayment

under the note and mortgage deed was consistent with its interpretation of the term prepayment and its reasoning in denying the plaintiffs' first two claims for credit.

Because the court's findings as to the interpretation of the term prepayment were not clearly erroneous, its conclusion based on those findings that the plaintiffs were due a credit for the prepayment in 1985, was also not improper.

The judgment is affirmed.

In this opinion the other judges concurred.