WILLIAM RUND ET AL. *v.* MICHAEL MELILLO ET AL.
(AC 20200)

Schaller, Spear and O'Connell, Js.

Argued January 16—officially released May 1, 2001

*Stephen R. Bellis*, with whom, on the brief, was *Daren Grove*, for the appellant (named defendant).

*Joshua A. Hawks-Ladds*, with whom, on the brief, was *Gwen P. Weisberg*, for the appellees (plaintiffs).

*Opinion*

SCHALLER, J. The defendant Michael Melillo appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiffs, William Rund and Professional Ventures, Inc. (Professional), in this breach of contract action. On appeal, Melillo claims that the court improperly (1) determined that the contract was ambiguous regarding whether the parties had bound themselves, both in an individual and corporate

capacity, to the contract and (2) concluded that sufficient evidence was produced at trial to find that the intent of the parties was to bind both the individuals and the corporations to the contract. We affirm the judgment of trial court.

The following facts and procedural history are pertinent to our disposition of the appeal. This action stems from a dispute involving a subcontract. In April, 1997, Melillo, acting as the president of the defendant Michael's Restoration, Inc. (Michael's), entered into a general construction contract with Charter Oak Square, LLP (Charter Oak), the owner of an apartment building. The contract provided that Michael's would recaulk all the exterior bay windows of the apartment building owned by Charter Oak. To execute that contract, Melillo and Michael's entered into a subcontract with Professional and Rund, an employee of Professional. The subcontract, which was drafted by Melillo, provided that Professional and Rund would provide all the caulking services and materials outlined in the general contract and, in exchange, Michael's or Melillo would pay them $33,000 upon completion of the work.

Subsequently, Professional and Rund completed the recaulking work on the apartment building in accordance with the subcontract. Shortly after the work was completed, Charter Oak in turn paid Michael's $53,000 pursuant to the general contract. Nevertheless, neither Michael's nor Melillo individually paid Professional or Rund any of the amount due under the subcontract. Consequently, Professional and Rund initiated this breach of contract action against Michael's[1] and against Melillo individually.

At trial, Melillo claimed, pursuant to his special defense, that although his corporation, Michael's, was

---

[1] The plaintiffs filed motions for default for failure to appear and for failure to plead against Michael's, which were granted. The defendant Michael's is not involved in this appeal.

a party to the subcontract, he was not personally liable on the subcontract because he had signed it only in his capacity as president. Melillo noted that the letterhead of the subcontract indicated only Michael's name and that, after signing his name, he had printed the word "president" next to his signature. According to Rund, all four parties entered into the subcontract, and, thus, Melillo was personally liable. To support this claim, Rund pointed to two portions of the subcontract that set forth, not only the corporations' names, but also the individuals' names. First, he noted the heading of the subcontract, which provided as follows: "CONTRACT AGREEMENT BETWEEN MICHAEL'S RESTORATIONS, INC., MICHAEL MELILLO AND PROFESSIONAL VENTURES, INC., WILLIAM RUND." Second, Rund pointed to the language below the two signature lines located at the bottom of the contract. Located directly below the first signature line are the names "Michael's Restorations, Inc./Michael Melillo." Under the second signature line are the names "Professional Ventures, Inc./William Rund."

Because the court determined that both interpretations were reasonable, it found that the contract was ambiguous as to whether the parties bound themselves individually. Accordingly, the court heard parol evidence to determine the parties' intent on the matter in question. After doing so, the court concluded that the parties, including Melillo, had signed the subcontract both on behalf of the corporations and in their individual capacities. The court, as a result, rendered judgment in favor of the plaintiffs against Melillo personally, as well as against Michael's. Melillo appeals from that judgment.

I

Melillo's first claim is that the court improperly determined that the subcontract was ambiguous regarding

whether the parties had bound themselves to the contract both in their individual and corporate capacities. We are unpersuaded.

At the outset, we note the well settled principles of contract interpretation. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract." (Internal quotation marks omitted.) *Bentz* v. *Halsey*, 54 Conn. App. 609, 616, 736 A.2d 931 (1999). On the other hand, "[w]hen an ambiguous term is at issue, the trial court can examine the extrinsic evidence to resolve the question of the parties' intent." (Internal quotation marks omitted.) *Larson* v. *Jacobson*, 38 Conn. App. 186, 190, 659 A.2d 753 (1995).

"Contract language is unambiguous when it has a definite and precise meaning about which there is no reasonable basis for a difference of opinion." *Paul Revere Life Ins. Co.* v. *Pastena*, 52 Conn. App. 318, 322, 725 A.2d 996, cert. denied, 248 Conn. 917, 734 A.2d 567 (1999), citing *Levine* v. *Advest, Inc.*, 244 Conn. 732, 746, 714 A.2d 649 (1998). "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) *John M. Glover Agency* v. *RDB Building, LLC*, 60 Conn. App. 640, 645, 760 A.2d 980 (2000). With these principles in mind, we now turn to the present case.

Our review of the language of the subcontract supports the trial court's determination that it is ambiguous as to whether the parties intended to bind themselves

individually. Both Melillo's and Rund's interpretations of the language are reasonable. On the one hand, Melillo's interpretation that he bound only the corporation, Michael's, and not himself, to the subcontract is reasonable in light of the fact that he printed the word "president" next to his signature. On the other hand, Rund's interpretation that all the parties bound themselves individually, including Melillo, is also reasonable. Such an interpretation is easily inferred from the heading of the subcontract, which names all four parties to the contract. Furthermore, in that heading, Melillo's and Rund's individual names appear without any indication that they are acting only on behalf of the corporations. Likewise, in addition to the corporations' names, their individual names appear below the signature lines without limitation. We conclude that the court properly determined that the subcontract was ambiguous as to whether the parties intended to bind themselves individually, and, as a result, the court was free to examine extrinsic evidence on the matter.

## II

Melillo also claims that the court improperly determined that the extrinsic evidence produced at trial was sufficient to enable the court to find that the intent of the parties was to bind both the individuals and the corporations to the contract. We are not persuaded.

We begin by emphasizing that our standard of review on this matter is limited. Because we determined in part I of this opinion that the relevant contract language was ambiguous, "[t]he determination of the intent of the parties to a contract . . . is a question of fact subject to review under the clearly erroneous standard." (Internal quotation marks omitted.) *Middletown Commercial Associates Ltd. Partnership* v. *Middletown*, 53 Conn. App. 432, 436, 730 A.2d 1201, cert. denied, 250 Conn. 919, 738 A.2d 657 (1999).

In the present case, we cannot conclude that the court's determination was clearly erroneous. Rund testified that he had entered into the subcontract under the belief that the parties were not only binding the corporations, but also the individuals. Melillo, of course, testified to the contrary. Acting within the scope of its duty, the court chose to believe Rund. "[I]t was the sole province of the court to determine the credibility of the witnesses and the weight to be given to the evidence. The trial court, as the finder of fact, is in the best position to assess the credibility of the witnesses testifying before it." (Internal quotation marks omitted.) *Petronella* v. *Venture Partners, Ltd.*, 60 Conn. App. 205, 212–13, 758 A.2d 869, cert. granted on other grounds, 255 Conn. 909, 763 A.2d 1036 (2000). The court was thus free to believe Rund and to disbelieve Melillo.

Of equal importance, we also note that Melillo drafted the ambiguous document. The applicable rule of contract interpretation in such situations is well settled. "When there is ambiguity, we must construe contractual terms against the drafter." (Internal quotation marks omitted.) *Cameron* v. *Avonridge, Inc.*, 3 Conn. App. 230, 233, 486 A.2d 661 (1985). We conclude, under these circumstances, that the court had before it sufficient evidence to find that the intent of the parties was to bind both the individuals and the corporate entities.

The judgment is affirmed.

In this opinion the other judges concurred.